Harper, J.,
delivered the opinion of the Court.
The principal question involved in this case, is, whether the real estate, descended to the defendant, Paul J. Warley, is liable for the payment of debts, in preference to the general personal estate, given to Paul J. Warley for life, and after his death to Charles Warley. There is no doubt, but that it is liable, in preference to the slaves *405 specifically bequeathed. Under the English law, I should incline to differ from the conclusion of the Chancellor with respect to its liability ; but the case may stand on a different footing in this State. Not that I think we are at liberty to depart from an established rule of law, because we may think it inconvenient, or unsuitable to our policy. But when our legislation innovates on the English law, that legislation must be pursued to its necessary consequences. The law in our State, on the subject of the marshalling and admin, istration of assets, is very unsettled, and I shall go into it somewhat more fully, than would be necessary for the determination of the present case.
1 Brev. Rep. 389.
The acts, which appear to have effected an alteration in the En. glish law, are, first, the statute 5 Geo. 2, c. 7, P. L. 250, by which lands are made liable to the payment of all debts, to the same extent, to which they were before liable for the payment of specialty debts : and second, our own statute of distributions, by which the character of the heir at law, as understood in England, has been entirely altered ; and which has taken away the ground of many of the English decisions, by which the apparent intention of testators has been violated in favor of the heir at law. The general rule in England seems to be perfectly well settled, as laid down by Lord Thurlow, in Donne v. Lewis, 2 Bro. C. C. 263, and repeated by Lord Elden in Harmood v. Oglander, 8 Ves. 124, “ that in the administration of assets, ordinarily, the first fund applicable is the personal estate not specifically bequeathed: then land devised for the payment of debts ; not merely charged, but devised, or ordered to be sold : then descended estates : then lands charged with the payment of debts.” And he might have gone on, then personalty specifically bequeathed ; and lastly, land devised, so far as respects specialty debts. We are to inquire, whether it is possible to retain this order, consistently with our statutes.
Under the st. 5 Geo. 2, c. 7, (supra,) it has been held, and perhaps properly, that the distinction between land and personal property, in respect to their liability for the payment of debts, has not been entirely abolished. The statute provides, that lands shall be liable to all debts, “ in like manner, as real estates are, by the law of England, liable to the satisfaction of debts due by bond, or other specialty.” P. L. 250. But by the law of England, the personal estate was fue primary fund for the payment of specialty, as well as simple contract, debts. This seems to be somewhat in conflict with the decision in D’Urphy v. Nelson, 4 M’C. 129, note, that lands are liable to be taken in execution, in the first instance, un *406 ^er a iU(%raenf against the executor. But in the case of Dunlap v. Dunlap, 4 Desaus. 329, it was held, that the personal estate was the primary fund for the payment of debts : and our practice ^as been, in cases of intestacy, to apply the personal estate in the first instance. Beyond this, we have settled nothing. It is perhaps beneficial to infant heirs, and legatees, that the more stable and permanent property should be reserved to the last.
The English rule'is, that the personal estate, not specifically bequeathed, shall be first applied ; and then, lands devised for the payment of debts. Can we adopt this consistently with our own laws 1 When a man devises land for the payment of his debts, his obvious meaning is, that that land, and, if it is sufficient, nothing else, shall be so applied. Why shall not his intention have effect ? The English cases admit, that a testator may, if he expresses himself with sufficient clearness, exempt his personal estate, as among his legatees, and representatives, from the payment of his debts, and throw the burden on the real. The rule, laid down by Lord Thurlow in Ancaster v. Mayer, 1 Bro. C. C. 462, and recognized in many cases, is, that there must be either express words, or declaration plain, to exempt the personal estate. The mere devise of the land is not sufficient with the English Courts ; because, in general, land is not liable to debts, unless the testator makes it so. In favor, therefore, of the heir, who, according to their policy, is not to be disinherited but by express words, they make this somewhat strained construction; that by devising land for the payment of debts, the testator means, that his debts shall not go unpaid, but that the land shall come in aid of the personal estate. But is it possible to make such a construction here, where, without any act of the testator, the land is liable to all debts, as well as the personal estate ? This would be to make his words absolutely unmeaning, and to strike out that part of his will. When a testator in this State devises land for the payment of debts, it is a declaration, as plain as words can make it, that the personal estate shall not pay those debts, if the land be sufficient. Take for example the case of Adams v. Meyrick, 1 Eq. Ca. Abr. 271, which has been denied in subsequent cases. A testator devised land to trustees, “ in trust that they do, and shall, by mortgage, or sale, of the said premises, or any part thereof, pay off and satisfy his debts,” with legacies and personal expenses. He devises all his goods, chattels, and household stuff in such a house, to another ; and then goes on in these words: “ all the rest and residue of my personal estate, I give and devise to my wife, whom I make sole executrix.” What *407 other conceivable meaning could we attach to this, in this country, but that the land should pay the debts, and the wife take the personal estate, exempted from them ? So in Samwell v. Wake, 1 Bro. C. C. 144, where the devise was, “ I will, and desire, that my debts and legacies shall be paid, and for that purpose I charge all my estates with the same; and, that it may be more easily done, that Sir William Wake, and Sir John Peach Hungerford, (the defendants,) and their heirs, shall sell the estate, and apply the money to the payment of debts and legacies.” But it is useless to multi, ply references to the English cases, as I have held them inapplica. ble to us.
The English rule goes on, after estates devised for payment of debts, “ then descended estates; then lands charged with the payment of debts.” That is to say, with respect to bond debts, to which alone descended estates are liable, they shall be liable in preference to lands devised, although charged with the payment of debts.. What is the meaning of the word charged ? There is no doubt about its meaning in England : it is to make land liable to debts, to which they would not be liable but for the act of the testator. Is it possible to attribute that meaning to it here, where lands are liable to all debts, by law, independently of any act of the testator 1 But we are bound to give meaning, and effect, to every part of a will, if we can. If a testator should think proper to use that word here, there would be nothing ambiguous in it. Every one would at once understand it to import, that the burden of the debts should be thrown on the real estate, in exemption of the personalty. It would be a direction to pay the debts out of that estate : and equivalent to a devise for the payment of debts. If a testator should devise land, charged with the payment of debts, the only meaning, we could possibly give to it, would be, that the debts should be paid out of the land, and if any thing remained, that should go to the devisee.
There are some cases, in which a devise of the testator’s whole personal estate, or of the residue of his personal estate, has been considered specific ; as where the intention has been clearly enough expressed, that the devise should take it exempted from the pay. ment of debts. Such was the case of Adams v. Meyrick, 1 Eq. Ca. Abr. 271, before referred to, which has been since denied. Such also was the case of Wainwright v. Bendlowes, 2 Vern. 718, in which the testator devised land to be sold for the payment of his debts, and the residue, after payment of his debts among three persons. He willed his household goods to go with his house, *408 an<^ ^10 res^ue of his personal estate to his sister, whom he made his executrix. Lord Hardwicke, in Inchiquin v. French, Ambl. 38, censures the reasoning of the Chancellor in this case, but 1 do not understand the case itself to be questioned in any of the subsequent cases. In Walker v. Jackson, 2 Atk. 624, the testator devised land to be sold for the payment of debts, legacies, and funeral expences, and appointed two executrixes; and by a codicil he devised to his executrixes all his personal estate not before devised : This was held to be specific, on the ground, that, as they would have been intitled, in the character of executrixes, to' the surplus of the personal estate, after payment of the debts, the only effect of the codicil must be, to give them the whole specifically. Other cases of this sort are Webb v. Jones, 2 Bro. C. C. 60, and Burton v. Knowlton, 3 Ves. 107. In Watson v. Brickwood, 9 Ves. 453, the testator gave his whole personal estate to a nephew, he paying thereout his legacies, funeral expences, and simple contract debts. This was held not to exempt the personal estate from specialty debts. The Master of the Rolls quotes the ancient rule, as laid down by Lord Nottingham, that “ the law charges the debts upon the personal estate, and nothing can discharge it, but exclusive, and expressly negative words, whether in the case of hares factus, or hares natus.
There is no doubt, but that if in England a testator gives his whole personal estate, and charges his debts on his real estate, the personal estate must be first applied ; because the technical signifi. cation of the word charge is, a direction that the land shall come in aid of the personalty. And so, doubtless, if he suffers the land to descend. Yet when a testator gives his whole personal estate, the obvious and literal import of the word is, the whole personal estate, of whatever particulars it may be made up ; which the legatees cannot have, if debts are to be paid out of it. Why are these words differently construed in England ? The reason has been already explained. The testator, as against creditors, cannot exempt his personal estate from the payment of debts. As said by Lord Nottingham, the law charges the debt upon the personal estate. The law exempts the real estate, in the hands of the heir, from the payment of debts; and, generally speaking, it is not considered a fund for the payment of debts at all. The testator must be supposed to be aware of this ; and when, therefore, he neglects to provide for the payment of his debts out of his real estate, and to exempt his personal, though he bequeathed his whole personal estate, this must necessarily be understood, as subject to the payment of *409 debts. But can this reasoning apply in this country, where the law charges all debts, alike, upon real, and personal .estate ; and the testator, bequeathing his whole personal estate, knows, that there will be lands in the hands of his heir, on which creditors may come, directly, for the satisfaction of their demands 1 I think not; and I conclude, therefore, that where a testator devises his whole personal estate, and suffers his lands to descend ; or where, after giving specific legacies, as in the cases of Wainwright v. Bendlowes, and Walker v. Jackson, (supra,) he gives the residue ; this is to be considered specific, and the lands descended are first liable to debts. Of course, if a testator merely gives (he residue, this must mean' after the payment of debts; and still more so, if he gives his personal estate, expressly “ after payment of debts.”
Still l must suppose, that personal property, although specifically bequeathed, is liable to debts in preference to land devised. Every devise of land is specific. When a testator gives property specifically, of course he does not intend that it shall pay debts. If, however, he does not leave a sufficient surplus for payment cf debts, his intention cannot have effect, and the law attaches upon the property, as if no disposition had been made. The st. 5 Geo. 2, c. 7, only makes land liable to all debts, as lands are liable in England to debts by specialty. But in England, the personal estate is still first liable to specialty debts ; and, our decisions have declared it the primary fund. It follows, that if the whole real, and personal estate, are devised specifically, the debts must be paid out of the personal estate. If a specific legacy be taken by creditors, the legatee has no right to contribution from the devisee of the land ; although the devisee of the land would, in like case, have a right to be reimbur. sed by specific legatees. There may seem to be some hardship, and irregularity in this, and perhaps it might be well that the legislature should apply a remedy : but it is not for me to alter the law. I think, however, that specific legatees would have a right to be reimbursed out of land descended.
It follows from the views that I have taken, that assets are to be administered in the following order: First, real, or personal estate devised for the payment of debts, or in any manner directed to be so applied. Second, personal estate not specifically bequeathed ; and a bequest of the testator’s whole personal estate, or of the residue after specific legacies out of it, to be regarded as specific. Third, descended real estate. Fourth, personal estate specifically bequeathed. And lastly, real estate devised.
In the present case, the testator gives, by his codicil, the whole *410 ^1'3 Persotlal estate, after the death of the defendant, Paul J. Warley, to the complainant, Charles Warley. If this were all, I should think the legacy specific : but the terms of the codicil are, ** and singular, my real, and personal estate, after the payment of all my debts and legacies.” The argument is, that the devise of the land having accidentally failed, contrary to the testator’s intention, the complainant ought to be in as good a situation, as if the personal estate alone had been given ; and, indeed, has a stronger equity : and that the words, “ after payment of all my debts and legacies,” having been intended to apply to both the real, and personal estate, should, by an equitable construction, and to fulfil the intention, be referred to the real estate. If these words had been used in England, in a will duly executed to pass real estate, the effect of them would have been to create a charge upon the land, in this State, they would have had no effect, as to debts, but have left the property liable, as at law. The question is, whether I am not bound to apply these words to the bequest of the personal estate ; and I think I am so bound.
From the authorities, I am not at liberty to suppose, that the testator’s intention was accidentally disappointed. The settled rule is, that when a will is not duly executed, according to the requisitions of the statute of frauds, wo are not at liberty to read the will as to the real estate. In Heario v. Greenbank, 1 Ves. 298, where the will was void as to the land, on account of the infancy of the tes. tatrix, Lord Hardwicke held, that he could not look into the will at all, to raise a case of election. There was no will of the land. In Boughton v. Boughton, 2 Ves. 12, where the will was not duly executed to pass real estate, but real estate was devised, and a legacy given to the heir, on the express condition not to dispute the will, he held, that the express condition, annexed to the legacy, made a case of election : and he distinguishes it from the case of an implied condition, attempted tó be raised, when by a will, not duly executed, a legacy is merely given to the heir, and the land devised away. He says it was merely guessing at the intent of the testator, who might leave it for that very view. In Buckeridge v. Ingram, 2 Ves. Jun. 666, the Master of the Rolls says, “ I cannot read the will, without the word real, in it; but I can say, for the statute enables me, and I am bound, to say, that if a man, by a will unattested, gives both real, and personal estate, he never meant to give the real at all.”
There are other cases to the same effect, and though Lord Alvanley in Ex parte the Earl of Ilchester, 7 Ves. 372, and Lord El *411 den, in Sheddon v. Goodrich, 8 Ves. 497, seem to express some dissatisfaction with the rule, not the slightest doubt is expressed of its existence. Perhaps, it is not without some show of reason. One of two suppositions must be made : either that the testator, being ignorant of the law, supposed that witnesses were not necessary to a will of real estate ; or, that, "although he may have intended to give the land, when the will was drawn, yet he altered that determination, and concluded to give only the personal estate. The former, as Lord Hardwicke says, would be only a speculation on the testator’s intention, and opposed to the maxim, that every man is presumed to know the law ; and perhaps it is safer, and more legitimate, to conclude, that the testator intended what he has done. Then I am to read this will as if the words “ real and” were struck out. But I cannot strike out any thing else. On what principle can I strike out the additional words, “ after payment of all my debts and legacies 1” The testator knew what was in his will, and I must suppose him to have intebded it to operate as it stood, and every word in it to have effect, except as to the giving of the real estate. The words in question, can only have the effect of rendering the personal estate subject to the payment of debts. On this point, therefore, the decree of the Chancellor must be reversed.
On another point I differ with the Chancellor, and that is with respect to the manner in which the debts are to be apportioned between the tenant for life and the remainderman. The old rule was as stated by the Chancellor ; but this has been exploded by more modern decisions. The rule now is, that the tenant for life must keep down the interest; but if the debts are to be paid off, so much of the estate must be sold as is necessary to pay them : or, if it be not divisible, the whole must be sold, and the surplus invested, so that the tenant for life may receive the interest during his life. White v. White, 4 Ves. 32, Lord Penrhyn v. Hughes, 5 Ves. 107.
In this case the whole estate has been sold. The debts must be paid off out of the proceeds of the personal estate, and the surplus of that estate invested, so that the defendant may receive the interest during his life ; the complainant then to receive the principal: and it is referred to the master to report on the proper mode of investment. The defendant must receive the proceeds of the real estate. In other respects, the Chancellor’s decree is affirmed.
Johnson, J., and O’Nealx,, J., concurred.

Decree modified.